IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JAMES A. JOHNSON, SR., # 209541, | ) | Civil Action No. 3:06-2062-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| S.C. DEPARTMENT OF CORRECTIONS, | ) | |
| DIRECTOR JON OZMINT; | ) | |
| WARDEN PADULA; | ) | |
| ASSOCIATE WARDEN BROOKS; | ) | |
| ASSOCIATE WARDEN BELL; | ) | |
| MAJOR PRICE; | ) | |
| CAPTAIN J. BLACKWELL; | ) | |
| CAPTAIN A. THOMAS; | ) | |
| SERGEANT C. RICHARDSON; | ) | |
| SGT. RAY DIXON; | ) | |
| IGC W. MITCHELL; | ) | |
| NURSE HILL; | ) | |
| MR. B. RICKERSON; AND | ) | |
| MS. SHARON PATTERSON, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |

Plaintiff filed this action on July 18, 2006.[1]  He is an inmate in the Special Management Unit

("SMU") at the Lee Correctional Institution ("LCI") of the South Carolina Department of

Corrections ("SCDC").  On December 13, 2006, Defendants filed a motion for summary judgment.

Plaintiff, because he is proceeding pro se, was advised on December 14, 2006, pursuant to Roseboro

v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for

summary judgment with additional evidence or counter-affidavits could result in the dismissal of

his complaint.  Plaintiff filed a response on January 22, 2007.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule
73.02(B)(2)(e), DSC.  Because these are dispositive motions, this Report and Recommendation is
entered for review by the court.

MOTION FOR PRELIMINARY INJUNCTION/MOTION FOR PROTECTION

On August 29, 2006, Plaintiff filed a motion for protection. He requests "immediate separation" from Defendants "because he believes that there are sufficient reasons to believe his life and well being are in jeopardy." He claims that since filing this action, he has been constantly harassed by Defendants, Defendant Richardson set up another inmate to attack him with a homemade knife, he is subjected to verbal threats by Defendants Dixon and Price, Thomas and Price denied him legal materials, he was denied treatment for asthma, he believes he did not receive his incoming mail, and he is unsure whether his outgoing correspondence was mailed. Defendants, who do not appear to have been served with this motion, have not filed a reply.

On November 7, 2006, Plaintiff filed a motion for a preliminary injunction to prevent Defendants from denying him the right to clean his cell according to penological policies; denying him books, magazines, and newspapers from publishers through the mail; subjecting him to cruel and unusual punishment from exposure to chemical munitions; denying him access to prescribed asthma inhalers that are stored in the control booth rather than in Plaintiff's cell; and denying him "equal due process" as to his disciplinary hearings. On November 27, 2007, Defendants filed a reply. They contend that Plaintiff did not provide a verified Complaint and has not provided any supporting affidavits or a memorandum of law showing that he is entitled to the injunctive relief he seeks. Additionally, Defendants contend that Plaintiff fails to establish a "strong showing of irreparable harm" if his injunction is denied, and fails to establish a reasonable basis for obtaining the relief requested.

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

2

(a)  plaintiff's likelihood of success in the underlying dispute between the parties;

(b) whether plaintiff will suffer irreparable injury if the interim relief is denied;

(c)  the injury to defendant if an injunction is issued; and

(d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994);  North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977).  The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted.  Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly.  The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits.  Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's August 29, 2006 motion for protection should be denied because there is no indication that Plaintiff ever served Defendants with a copy of his motion.[2]  The motion should also

---

[2]The Federal Rules of Civil Procedure require:
Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders..., every paper relating to discovery required to be served upon a
(continued...)

be denied, and Plaintiff's November 7, 2006 motion for a preliminary injunction should be denied, because Plaintiff is unlikely to be successful in the underlying dispute between the parties and is unlikely to suffer irreparable injury if interim relief is denied.

As is discussed further, in regard to Defendants' motion for summary judgment, it is unlikely that Plaintiff will be successful as to his claims concerning medical care, a failure to protect, access to reading materials, cell conditions, exposure to pepper spray, and disciplinary hearings.  Further, to the extent that Plaintiff complains of verbal abuse and harassment by Defendants and any denial of access to the courts (claims concerning mail and legal materials), he fails to establish a constitutional claim.

Verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits.  The decision merely requires that the right of access to the courts not be

---

[2](...continued)
party unless the court otherwise orders,... shall be served upon each of the parties.
Fed. R. Civ. P. 5(a).  Additionally, "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court within a reasonable time after service...."  Fed. R. Civ. P. 5(d).

4

impeded.  The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996).  In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993).  A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54. Plaintiff fails to show actual injury from his alleged denial of access to the courts.  Despite his claims, he has been able to file numerous pleadings in this action.

## DISCUSSION

Plaintiff claims that his[3] constitutional rights were violated because Defendants: (1) were negligent;[4] (2) subjected him to unconstitutional conditions of confinement; (3) subjected him to

---

[3]Plaintiff also appears to be attempting to assert claims on behalf of other inmates.  Plaintiff lacks standing to assert claims on behalf of other detainees.  See Laird v. Tatum, 408 U.S. 1 (1972). See also Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 482 (1982); Flast v. Cohen, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); and Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)(a prisoner cannot act as a "knight-errant" for others). Cf. Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a pro se prisoner cannot be an advocate for others in a class action); and McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

[4]Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, (continued...)

excessive force; (4) were deliberately indifferent to his serious medical needs; (5) denied him the right to attend religious services while in SMU; (6) denied him the right to receive magazines, books, and newspapers from the publisher;[5] (7) failed to protect him from other inmates; (8) refused to process his grievances; and (9) violated his rights as to disciplinary hearings.[6]   Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to show that he was deprived of his right to be free from excessive force; (2) the claim of deficient conditions of confinement fails to state a valid cause of action; (3) Plaintiff fails to show that Defendants were deliberately indifferent to any serious medical condition; (4) Plaintiff's allegations that his due process rights were violated by Defendant Mitchell and an improper application of the grievance system at LCI have no foundation; (5) Plaintiff fails to show that Defendant Patterson violated any

---

[4](...continued)
474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995)(applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

[5]Plaintiff has not specified what book, magazine, or newspaper, if any, he requested and was denied.  Associate Warden Bell provides that SMU inmates are allowed to receive books and magazines from the LCI library, but is allowed only one item at a time because inmates were using such materials to set fires, and restricting these materials will continue until there is an improvement in SMU inmates' behavior.  Regulations affecting incoming mail are valid if they are reasonably related to a legitimate penological interest. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987).  Prison officials are given considerable deference in regulating the delicate balance between prison order and the demands of outsiders who seek to enter the prison environment.  Thornburgh, supra.

[6]Plaintiff also appears to allege that Defendants have denied him the right to observe certain SCDC policies as to the use of force, chemical munitions, and restraint chair policies.  It is unclear what constitutional right he claims was violated.  Associate Warden Bell states that all policies not restricted are available to all inmates at the law library for inspection.  She states that restricted policies are not available due to security considerations because allowing inmates to study these policies might give them undue insight into security procedures, resulting in an unexpected advantage should an inmate attempt to resist efforts to bring him under control, and the restriction protects inmates and security staff.  Bell Aff., Para. 3.

of his due process rights; (6) Plaintiff cannot show liability on a theory of respondeat superior;[7] (7) Plaintiff makes no viable claim that Defendants Blackwell and Thomas were constitutionally deficient in their supervisory duties; (8) Plaintiff fails to establish a failure to protect claim; (9) Plaintiff's claim that agency policies have been violated fails to rise to the level of a constitutional violation; (10) Plaintiff failed to exhaust his available administrative remedies;[8] (11) Plaintiff is not entitled to injunctive or declaratory relief because he has not exhausted his available administrative remedies; (12) Plaintiff may not seek damages against the State of South Carolina or State officials acting in their official capacities; (13) Defendants are entitled to qualified immunity in their individual capacities; and (14) any State law claims should be dismissed.

    1.    <u>Excessive Force</u>

---

[7]The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), <u>cert.</u> <u>denied</u>, <u>Reed v. Slakan</u>, 470 U.S. 1035 (1985).

[8]It is recommended that Defendants' motion for summary judgment be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff has failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532.

    Mary Coleman, chief of the Inmate Grievance Branch for SCDC, states that Plaintiff filed a multitude of grievances at LCI, but in only two cases has he proceeded past the Step One level of the grievance process. Those grievances concern the frequency of showers in the SMU and the processing of grievances. Coleman states, however, that those two grievances are still open at Step Two. Coleman Aff.

Plaintiff alleges that on a number of occasions Defendant Dixon sprayed a large quantity of chemical munition pepper spray called "top cop."[9] He claims that this chemical munition is only to be used by officers who are lieutenants or higher and Dixon, a sergeant, is not qualified to use it. Plaintiff alleges that he choked on the gas. He claims that the munitions are only supposed to be used in extreme situations, but Dixon used "top cop" whenever inmates refused to shut their food flaps. Plaintiff also alleges that Dixon used broomsticks to beat inmates on their arms and to poke them in their mid-sections through the food flaps. Defendants contend that Plaintiff fails to establish a constitutional claim because he fails to show that any injury suffered was sufficiently serious to establish a constitutional violation. Dixon states that he is qualified to use any and all chemical munitions utilized in the SMU at LCI. He states that Plaintiff has an extremely disruptive disciplinary history including threats to inflict harm on security staff, throwing liquid or unidentified substances at security staff through his food flap, and damaging property. Dixon denies using broom sticks to strike inmates. Dixon Aff.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth

_____

[9]It does not appear that the chemical munitions were used against Plaintiff, but were used against other inmates on SMU.

Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263.

Because de minimis injury may serve as evidence that de minimis force was used, an excessive force

claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de

minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an

impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of

mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff has not alleged he sustained anything more than de minimis injuries as a result of

the alleged uses of force. Thus, he fails to show that his injuries were anything more than de

minimis and he fails to establish a constitutional claim.

Review of Plaintiff's medical records reveals that he was treated on March 30, 2006, after

the use of chemical munitions. No shortness or breath or redness or tearing of his eyes was noted.

Plaintiff was instructed to flush his eyes and skin with water for any burning sensation. His inhalers

were afforded to him and it was noted that no further treatment was needed. Plaintiff was treated

by a nurse on April 9, 2006, after he was exposed to chemical munitions. The nurse noted that

Plaintiff had no redness or tearing of his eyes and no shortness of breath. She instructed Plaintiff

to flush his eyes and skin with water for any burning. The nurse wrote that no injuries were noted

and no treatment was needed. Plaintiff was noted to be in no acute distress on June 22, 2006, after

9

exposure to chemical munitions.  On July 8, 2006, Plaintiff was examined after the use of chemical munitions and it was noted that his eyes were clear, his respiration was even, his skin was free from irritation, and no treatment was needed at that time.  On August 10, 2006, it was noted that Plaintiff was again examined after exposure to chemical munitions, at which time  Plaintiff stated he was fine.  He had no tearing or redness of his eyes, no shortness of breath, and no treatment was required.  There is no indication in the medical records that Plaintiff made any complaints regarding the use of a broomstick by Defendant Dixon to strike him.  Plaintiff's Medical Records (Attachment to Defendants' Motion for Summary Judgment).

Defendants' use of force was de minimis.  See e.g., Norman v. Taylor, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force);  Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024 (1992); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order to inmate and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell

bars and thereby lacerating inmate's finger was de minimis force); <u>Crow v. Leach</u>, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force; <u>Jackson v. Hurley</u>, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); <u>DeArmas v. Jaycox</u>, 1993 WL 37501 (S.D.N.Y. February 8, 1993), <u>aff'd</u>, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); <u>Olson v. Coleman</u>, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); <u>Candelaria v. Couglin</u>, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), <u>aff'd</u>, 979 F.2d 845 (2d Cir. 1992); <u>Neal v. Miller</u>, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); <u>Ramos v. Hicks</u>, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); <u>Anderson v. Sullivan</u>, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Plaintiff's injuries were de minimis.  Thus, Plaintiff has not met the objective component of his excessive force case and has not shown that Defendants violated his Eighth Amendment rights.

2.  <u>Conditions of Confinement</u>

Plaintiff alleges that his constitutional rights were violated by his conditions of confinement.  Specifically, he claims that from January 13 to June 26, 2006, he was afforded

recreation less than ten times;[10] was allowed to clean his cell less than ten times; was not allowed to mop his cell; went numerous times for an entire week without a shower; his food was always served cold;[11] and Sergeant Dixon tied the flaps of cell doors down with strips of sheets causing a fire and safety hazard.  Complaint at 4-5.  Defendants contend that Plaintiff fails to show that any deprivations were subjectively serious and he fails to establish the subjective element of deliberate indifference.

Associate Warden Bell states that inmates generally are allowed out-of-cell recreation five days per week, one hour per day, weather permitting, unless safety and security reasons dictate otherwise.  If an inmate's behavior creates a serious threat to his own safety and security or the safety and security of others, the inmate's recreational privileges may be suspended for a time and the inmate is provided with a copy of an in-cell exercise program.  Bell states that based on Plaintiff's history of disciplinary problems, unit supervisors are within their right to restrict Plaintiff's recreation privileges.  She states that inmates in the SMU are expected to maintain cell

_____

[10]As a general rule, the denial of out-of-cell exercise for an extended period violates the Eighth Amendment, absent exceptional circumstances.  Mitchell v. Rice, 954 F.2d 187 (4th Cir.), cert. denied, 506 U.S. 905 (1992); see also Sweet v. South Carolina Dep't Of Corrs., 529 F.2d 854, 866 (4th Cir. 1975).

[11]Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986).  Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents.  Divers v. Dep't of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v. Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment).

cleanliness throughout the day, cleaning supplies and tools are provided to inmates at least three times a week, and inmates are given between fifteen and thirty minutes a day to use the supplies to clean their cells. Bell states that inmates who misuse cleaning supplies or tools are not be given the regular items, but are given alternative supplies to clean their cells. As Plaintiff has a lengthy disciplinary history, allowing him to have certain cleaning supplies, which he may throw on security officers, was curtailed. Additionally, allowing Plaintiff access to a mop which can be used as a weapon is not prudent due to his behavioral deficiencies. Bell states that due to Plaintiff's disciplinary history, shower privileges may be lessened at times due to the need for security and safety in the SMU. Bell Aff., Paras. 6-8. Dixon states that Plaintiff's food flap can be secured by locking it because Plaintiff throws substances through the food flap at staff. Dixon Aff., Para. 4.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and

13

disregarded an excessive risk to inmate health or safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825  (1994).
A plaintiff must produce evidence of serious or significant physical or emotional injury resulting
from the challenged conditions to withstand summary judgment on a prison living conditions claim.
<u>Strickler</u>, 989 F.2d at 1380-81.

Plaintiff fails to establish a constitutional claim because he has not shown any serious or
significant physical or emotional injury resulting from the alleged conditions.  <u>See</u> <u>Strickler,</u> 989
F.2d at 1380-1381.   Review of his medical records fails to reveal any serious or significant injury
resulting from his alleged conditions.  Further, Plaintiff fails to show that Defendants, who have
taken actions based on Plaintiff's disciplinary problems and to ensure safety at the institution, acted
with a significantly culpable state of mind.

3.     <u>Failure to Protect</u>

Plaintiff alleges that Defendant Richardson got mad at him and promised another
inmate (John Hammond) special favors if he did something to Plaintiff.  He claims Hammond tried
to harm him a couple of times, but officers were aware of what was going to happen and intervened.
He also claims that "Sue"[12] witnessed inmate Timothy Player trying to cut Plaintiff with a
homemade knife while he was being escorted to get a haircut and "Sue" refused to report the
incident or the knife, but Officer Wilson, Officer, Jackson and Officer Law witnessed the incident
and intervened.  Complaint at 5-6.  Defendants contend that Plaintiff fails to establish a failure to
protect claim because Plaintiff admits (Complaint at 5-6) that no harm came to him from any alleged
attempt of another inmate to harm him.  Defendant Richardson denies that she ever asked inmates
to injure Plaintiff.  Richardson Aff., Para. 4.

_____

[12]It is unclear, but "Sue" may refer to Defendant Richardson.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim.  Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987).  Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id., at 847.  The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregarded that risk.  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id., at 837.  While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive.  Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.  1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff's claims fail because he has not shown anything more than de minimis injury from the alleged attacks.  See Norman v. Taylor, 25 F.3d 1259, 1263-64 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995).  Further, as Plaintiff admits that officers took steps to quell any threat, he fails to show that Defendants were deliberately indifferent to any alleged danger.

15

Plaintiff also appears to claim that he suffered psychological injury based on these incidents. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims.  See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989).  The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[13]

42 U.S.C. § 1997e(e).

    4.    <u>Medical Needs</u>

Plaintiff alleges that his constitutional rights were violated because Nurse Hill refused to respond to four requests from him informing her that sick call was supposed to be held four days a week, but was not.  He also claims that the doctor was supposed to treat inmates on SMU once a week, but the doctor only appeared about six times in six months.  Plaintiff also claims that he is supposed to receive medication two times a day, but at times medication was not delivered and he was not allowed to keep his asthma inhaler in his cell.  Complaint at 5 and 7.  Defendants contend that Plaintiff has not alleged any sufficiently serious condition.  They provide that since his transfer to LCI in January 2006, Plaintiff had been seen (as of September 19, 2006) on at least sixty

---

[13]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant.  Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

occasions, including sick call, doctor's clinics, mental health visits, lab clinics, and x-ray examinations.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976).   The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

17

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. First, Plaintiff has not shown that he had any serious medical needs. Further, he fails to show deliberate indifference. Review of Plaintiff's medical records reveals that on numerous

18

occasions he was examined by SCDC Health Service providers, lab work and x-rays were performed, medications were prescribed, medications were regularly administered to him, and a physician examined him on several occasions.  Plaintiff's Medical Records (Attachment to Defendants' Motion for Summary Judgment).

To the extent that Plaintiff disagrees with his medical care, he fails to show that his constitutional rights were violated.  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."   Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary.  See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Although Plaintiff may believe that he should have received different medical treatment, his allegations do not rise to the level of a constitutional violation.

> 5.    Due Process - Disciplinary Hearings

Plaintiff alleges that he is denied due process because Sharon Patterson, a disciplinary hearing officer, constantly refused to allow him to confront witnesses and accusers or to present witnesses.  He also claims that Patterson refused to provide him with a disposition of his cases on two occasions until two months after the fact, at which time it was too late to submit a grievance appeal.  Additionally, Plaintiff claims that Patterson did not provide fair and impartial hearings because she favored officers over the inmates and does not like Plaintiff because he threatened her.  Complaint at 7-8.

Defendant Patterson states that inmates have the right to call witnesses or introduce statements on their behalf that are pertinent to the charge; the testimony of a witness may be denied if it is likely to jeopardize the life or safety of persons or the security of the institution; written statements are considered; if an inmate refuses to appear at a hearing or is unavailable, the hearing may be conducted in the inmate's absence; if Plaintiff did not attend a disciplinary hearing she conducted, it was due to his disruptive behavior; she promptly completed the Disciplinary Report and Hearing Record which was served on the inmate, she has no grudge or hidden agenda with Plaintiff; and she determines an inmate's guilt or innocence concerning each charge based on a preponderance of the credible evidence before her.

Plaintiff has made no specific allegations regarding any particular disciplinary hearing, making meaningful analysis of his claim impossible. Further, to the extent Plaintiff is complaining about the outcome of any disciplinary proceedings, those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck), as he has not shown that he successfully attacked any disciplinary hearing conviction.

6.     SCDC Policies

Plaintiff claims that Defendants have failed to comply with SCDC and American Correctional Association Standards by failing to make weekly appearances in the segregation unit

and to appoint an inmate representative.[14]  Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation.  See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

       7.     Due Process-Grievances

      Plaintiff alleges that Defendant Mitchell, a grievance coordinator, denied him due process of law by refusing to process his grievances against "these cruel conditions."  Complaint at 6-7.  Defendants contend that Plaintiff fails to show that he has a constitutionally protected right to a grievance procedure.

      The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state."  Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983.  See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

---

[14][W]hile the recommendations of these various groups [includes the American Correctional Association] may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."  Bell v. Wolfish, 441 U.S. 520, 543 n. 27 (1979).

8.    First Amendment/Religion

Plaintiff claims that he is denied the right to attend religious services while on segregation.  Associate Warden Bell states that inmates assigned to SMU are allowed visitation by the institutional chaplain once a week, individual inmate requests to see a chaplain receive a prompt response, and inmates are allowed in-cell religious programming.  She states that because the SMU houses the institution's most unruly and disciplinary challenged inmates, security prohibits allowing inmates out of their cells to attend religious services as a group.  Bell Aff., Para. 5.

The rights and protections of the Constitution do not end when a citizen is sentenced to prison.  Turner v. Safley, 482 U.S. 78, 84 (1987).  Imprisonment may limit, but not completely abrogate, a prisoner's right to the free exercise of his religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987).  However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system."  Price v. Johnson, 334 U.S. 266, 285 (1948).  For that reason, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. at 89.  Where prison officials demonstrate that they are pursuing a legitimate governmental objective, and show a "minimally rational relationship between that objective and the means chosen to achieve that objective," the means must be upheld.  Hines v. South Carolina Dep't Corrs., 148 F.3d 353, 358 (4th Cir. 1998).

Plaintiff fails to show that his constitutional rights were violated.  There is no indication that he is unable to exercise his religion in his own cell.  He has not disputed Defendants' legitimate penological reasons (security) for their actions.  See, e.g., Sweet v. South Carolina Dep't of Corrs.,

529 F.2d 854 (4th Cir. 1975)(inmates in protective custody need not be permitted to attend group religious services).

       9.    <u>Immunity</u>

            Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

       The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

10.     State Law Claims

It is unclear whether Plaintiff is attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

24

<u>CONCLUSION</u>

Based on review of the record, it is recommended that Plaintiff's motion for protection (Doc. 19) be denied; Plaintiff's motion for preliminary injunction (Doc. 27) be denied; and Defendants' motion for summary judgment (Doc. 30) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 14, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

25

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

26